**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI**

| | | |
|---|---|---|
| **BROOKE L.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **Case No. 1:25-cv-00622** |
| | : | **Judge Susan J. Dlott** |
| | : | **Magistrate Judge S. Courter M. Shimeall** |
| **COMMISSIONER OF** | : | |
| **SOCIAL SECURITY,** | : | |
| | : | |
| **Defendant.** | : | |

**REPORT AND RECOMMENDATION**

Plaintiff, Brooke L., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors. (ECF No. 10.) For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.      BACKGROUND**

Plaintiff applied for DIB on July 3, 2023, alleging disability as of March 1, 2023, due to anxiety, depression, Bi-polar Disorder, a stressor disorder and Post–Traumatic Stress Disorder. (ECF No. 7 at PageID 240–43, 302.) Plaintiff's application was denied initially on December 1, 2023, and upon reconsideration on May 28, 2024. Thereafter, Plaintiff appeared, with counsel, before an administrative law judge ("ALJ") on February 26, 2025. (*Id.* at PageID 58–76.)

1

On March 14, 2025, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (*Id.* at PageID 37–57.)

The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2027, and applied the five-step sequential process to evaluate her DIB application. [1]  (ECF No. 7 at PageID 42.)

- Step One: The ALJ found that Plaintiff has not engaged in substantial gainful activity since March 1, 2023, the alleged onset date.  (*Id.*)

- Step Two: The ALJ found that Plaintiff has the following severe impairments: depressive disorder; an anxiety disorder; and a post-traumatic stress disorder ("PTSD").  (*Id.*)

- Step Three: The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.* at PageID 43.)

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

[Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she could understand, remember, and carry out simple instructions. She could use judgment to make simple work-related decisions. She could not perform work requiring a

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009).

specific production rate such as assembly line work. She could deal with occasional changes in a routine work setting. She could occasionally interact with supervisors and coworkers, but she could not perform tandem tasks or negotiations. Finally, she could never interact with the public.

(*Id.* at PageID 43–44.)

- Step Four: The ALJ determined that Plaintiff is unable to perform her past relevant work as a receptionist based on the VE testimony. (*Id.* at PageID 49–50.)

- Step Five: The ALJ concluded that—when considering her age, education, work experience, RFC, and in reliance on the Vocational Expert's testimony—there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as a floor waxer, store laborer, or router. (*Id.* at PageID 50–51.)

The ALJ therefore concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since March 1, 2023. (*Id.* at PageID 51.) The Appeals Council denied Plaintiff's request for review on June 26, 2025. (*Id.* at PageID 23–29.) This appeal followed.

## II.     RELEVANT RECORD EVIDENCE

The Undersigned has reviewed the portions of the administrative record relevant to the claimed errors raised by Plaintiff. Rather than summarizing that information here, the Undersigned will refer and cite to it as necessary in the discussion of the parties' arguments below.

## III.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices [Plaintiff] on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.    ANALYSIS

Plaintiff asserts one Statement of Error, contending that the ALJ improperly evaluated, or even failed to evaluate at all, the supportability factor when considering the medical source opinion of Sharon Grimes, N.P.  (ECF No. 10 at PageID 755–60.)

The Commissioner counters that the ALJ's evaluation of Ms. Grimes's opinion shows that the ALJ not only considered the supportability of the explanation provided by Ms. Grimes on the check-the-box form she completed, but also considered whether the objective medical evidence in Ms. Grimes' own treatment notes supported her opinion.  (ECF No. 12 at PageID 780–85.)

The governing regulations describe five different categories of evidence: (1) objective medical evidence; (2) medical opinions; (3) other medical evidence; (4) evidence from nonmedical sources; and (5) prior administrative medical findings.  20 C.F.R. § 404.1513(a)(1)–(5).  Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources."  20 C.F.R. § 404.1520c(a).  Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements."  20 C.F.R. § 404.1520c(c)(1)–(5).  Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered.  20 C.F.R. § 404.1520c(b)(2).

In this case, the only factor at issue is supportability.

"The supportability factor recognizes that '[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her

5

medical opinion(s) . . . the more persuasive the medical opinions . . . will be.'" *Kati M. v. Comm'r of Soc. Sec. Admin.*, No. 2:23-CV-04128, 2025 WL 444046, at *7 (S.D. Ohio Feb. 10, 2025), *report and recommendation adopted*, 2025 WL 1640556 (S.D. Ohio Feb. 26, 2025) (quoting 20 C.F.R. § 416.920c(c)(1)). At bottom, an ALJ's supportability analysis must address "whether the medical professional has sufficient justification for their *own* conclusions." *Id.* (citing *Crystal E.J. v. Comm'r of Soc. Sec.*, No. 2:21-CV-04861, 2022 WL 2680069 (S.D. Ohio July 12, 2022)).

When addressing supportability of a medical provider's opinions, the ALJ should take into account how much the medical conclusions are supported  by that medical provider's records, "including progress notes, test results, statements from the claimant, and opinions from other medical providers." *See Kati M.*, 2025 WL 444046 at *8; 20 CFR 404 § 1520c(c)(1). Finally, "[a]lthough the ALJ is not required to use the 'magic words' of 'supportability' and 'consistency' when describing their reasoning, the ALJ must still provide sufficient reasoning, scaffolded with references in the medical record to support their decision, enough for a subsequent reviewer to trace the lines of their reasoning." *Mertle v. Comm'r of Soc. Sec.*, 2024 WL 5160189 at *8, 2024 U.S. Dist. LEXIS 229225 at *22–23 (N.D. Ohio 2024).

In this case, Plaintiff's nurse practitioner, Ms. Grimes, treated Plaintiff periodically over a one-year timespan, from May 2023 to May 2024. (ECF No. 7 at PageID 45–47.) Ms. Grimes completed a medical source statement on behalf of the state agency on April 23, 2024, largely by checking boxes to indicate the severity of Plaintiff's restrictions. (*Id.* at PageID 476–78.) Ms. Grimes indicated that Plaintiff was moderately impaired in her ability to understand and remember simple instructions, carry out simple instructions, and make judgments on simple work-related

6

decisions. (*Id.* at PageID 476.) Ms. Grimes found Plaintiff was markedly impaired in her ability to understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions. (*Id.*) Ms. Grimes also determined that Plaintiff was markedly impaired in her ability to interact appropriately with the public, supervisors, and workers, as well as in her ability to respond appropriately to usual work situations and to changes in a routine work setting. (*Id.* at PageID 477.) Ms. Grimes also opined that Plaintiff's attention to detail and working memory are impacted by her impairments. (*Id.*)

Plaintiff contends that the ALJ erroneously rejected Ms. Grimes's opinions by characterizing "Grimes' opinions [as] nothing more than mere checks on a page." (ECF No. 10 at PageID 757.) Plaintiff contends the ALJ's view of Ms. Grimes's opinions is unfair because it was the Social Security Administration's own form that contained the purportedly offensive check boxes. (*Id.*) But upon review of the ALJ's opinion as a whole, the Undersigned finds that the ALJ sufficiently addressed the supportability factor with respect to Ms. Grimes's opinion. *See Brenda W. v. O'Malley*, No. 2:24-CV-1128, 2025 WL 2750479, at *3 (S.D. Ohio Sept. 29, 2025) ("Courts are permitted to look elsewhere in the ALJ's decision as the ALJ does not need to 'spell out every fact a second time.'").

Although Plaintiff is correct that the ALJ considered Ms. Grimes's use of a check-the-box form, the Commissioner correctly points out that this was not "the only reason the ALJ provided for finding [Ms. Grimes's] opinion unsupported." (ECF No. 12 at PageID 784.) Indeed, the ALJ described at length Plaintiff's treatment history with Ms. Grimes, and noted that Ms. Grimes's treatment notes reflected that Plaintiff's severity was often situational in nature, that she had

moderate-to-mild anxiety levels; generally had an intact memory and adequate concentration; and

often reported feeling better while on medications.  (*See* ECF No. 7 at PageID 45–46 (citing

PageID 378, 380–82, 393, 400, 412, 417–18, 423–24, 523, 582.))

Later, when assessing the persuasiveness of Ms. Grimes's opinion, the ALJ noted that "Ms.

Grimes' opinion is unsupported by her own treatment records," and then referenced his earlier

discussion of Ms. Grimes's treatment notes, explaining that:

> As discussed earlier, when [Plaintiff] began treating with Ms. Grimes in May of 2023, she mainly complained of situational stress associated with running a business. See Exhibit 2F/p1. From a clinical perspective, Ms. Grimes observed a moderate anxiety level, a full mood, and a congruent affect. Id. at p4. [Plaintiff]'s memory and concentration appeared intact. Id. at p3-4. Moreover, with the introduction of medication, [Plaintiff] described feeling calm. See Exhibit 3F/p16. Even when [Plaintiff] complained of increased stress, Ms. Grimes documented generally unremarkable clinical findings. Id at p27 and p33-34.
>
> In September of 2023, [Plaintiff] told Ms. Grimes that she recently obtained a new boyfriend, a new home, and that she started a new job. See Exhibit 3F/p40. [Plaintiff] denied any anxiety or depression. Id. at p39. In early of 2024, [Plaintiff] again alleged increased symptoms, but she also reported that she stopped all of her medications. See Exhibit 7F/p25. With the reintroduction of medication, [Plaintiff] again noted feeling better. Id. at p45. In fact, just two days after Ms. Grimes completed her opinion, [Plaintiff] continued to indicate that she was doing well aside from situational stress related to her landlord. Id. at p85. Ms. Grimes noted a good mood and no anxiety. Id. at p81. [Plaintiff] had no questions or concerns during the visit. Id. at p89. Similarly, in early May of 2024, [Plaintiff] reported "feeling great". See Exhibit 7F/p104.
>
> There is no evidence [Plaintiff] returned to Ms. Grimes after May of 2024, but she did seek counseling through the Talbert House. Progress notes from the Talbert House suggested some anxiety with an otherwise normal demeanor, normal eye contact, normal thought, and a normal affect. See Exhibit 8F/p57. [Plaintiff] did not report any specific deficits in cognition. Id. On occasion, [Plaintiff] complained of stress, but her counselor noted an overall euthymic mood. Id. at p26. In September of 2024, [Plaintiff] appeared calm and reflective. Id. at p44. She reported a plan to move to Florida and find a new job.

(ECF No. 7, at PageID 49 (as it was included in the administrative record).)

In sum, the ALJ found that Ms. Grimes's "relatively benign clinical findings," for which he provided specific examples, coupled with the conservative course of treatment, did not support the degree of work-related limitations indicated by Ms. Grimes. *See Michael R. v. Comm'r of Soc. Sec.*, No. 2:22-CV-4117, 2023 WL 6160626, at \*5 (S.D. Ohio Sept. 21, 2023) (finding that the ALJ properly evaluated supportability of the medical provider's opinion "given the lack of objective evidence in the opinion itself and when compared to [the medical provider's] past treatment notes."), *report and recommendation adopted*, No. 2:22-CV-4117 WL 688754 (S.D. Ohio Feb. 20, 2024).  Based on the benign clinical findings and conservative treatment plan, the ALJ further surmised that it was "reasonable to assume Ms. Grimes relied heavily on the claimant's subjective complaints to complete her opinion."  (ECF No. 7 at PageID 49.)  When a medical provider's opinion is largely based on a plaintiff's own subjective complaints, the ALJ does not err in finding it unsupported.  *See Hopkins v. Comm'r of Soc. Sec.*, No. 23-5696, 2024 WL 3688302, at \*3 (6th Cir. Apr. 9, 2024) (upholding the ALJ's supportability determination when the medical provider relied heavily on the plaintiff's subjective complaints because "[r]egardless of any inherent subjectivity in the field of psychiatry, a doctor cannot simply report what [her] patient says and re-package it as an opinion." (citations and quotations omitted)).

Accordingly, the Court finds that the ALJ sufficiently described the supportability factor with respect to Ms. Grimes's medical opinion.

## V.    CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Based on the foregoing, it is therefore **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED,** and that the Commissioner's decision be **AFFIRMED.**

## VI.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d

981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED.**

*/s/ S. Courter M. Shimeall*
**S. COURTER M. SHIMEALL**
**UNITED STATES MAGISTRATE JUDGE**